**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS V. DURAN,** | : | **CIVIL ACTION NO. 4:14-CV-2047** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF CLINTON, JEFFREY** | : | |
| **SNYDER, ROBERT SMELTZ, and** | : | |
| **JOEL LONG,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Thomas V. Duran ("Duran") filed the above-captioned action

alleging a retaliation claim under the Family and Medical Leave Act ("FMLA"),

procedural due process claims under 42 U.S.C. § 1983, and state law claims for

wrongful termination, breach of contract, and tortious interference with contract.

Presently before the court is a motion (Doc. 5) to dismiss filed by defendants County

of Clinton, Jeffrey Snyder, Robert Smeltz, and Joel Long. For the reasons that

follow, the court will grant the motion in part and deny it in part.

**I.    Factual Background & Procedural History**[1]

From 1993 to 1997, and from 2000 to 2012, Duran was employed by Clinton

County, Pennsylvania ("the County") as Warden of the Clinton County Correctional

Facility ("the Facility"). (Doc. 1 ¶¶ 6, 16). At all times relevant to the complaint,

Jeffrey Snyder served as Prison Board Chairman and Vice-Chairman of the Clinton

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to
dismiss, the court will "accept all well-pleaded facts in the complaint as true and
view them in the light most favorable" to Duran. Carino v. Stefan, 376 F.3d 156, 159
(3d Cir. 2004).

County Board of Commissioners. (Id. ¶ 9). Robert Smeltz was Chairman of the Clinton County Board of Commissioners and a member of the Clinton County Prison Board. (Id. ¶ 11). Joel Long was a member of both the Clinton County Board of Commissioners and the Clinton County Prison Board. (Id. ¶ 12). Duran avers that the County and the Board of Commissioners "were ultimately responsible for all hiring and firing decisions of any County employee." (Id. ¶ 7).

On December 7, 2007, the County entered into an employment contract with Duran. (Doc. 1-2). The employment contract contained the following pertinent provisions:

> The term of employment shall commence November 5, 2007, and shall continue for a period of five (5) years, except as otherwise provided in this agreement.
>
> . . .
>
> The County and The Prison Board may terminate this Agreement only upon a finding of dishonesty or gross malfeasance by the Employee.
>
> . . .
>
> No amendment, modification or extension of this Agreement shall be valid or binding upon the parties unless made in writing and signed by the parties.

(Id. at 3-5). Duran contends that his employment contract was in force until November 4, 2012, and that it renewed on that day "for an additional five (5) year period." (Doc. 1 ¶¶ 44-45).

Between 2003 and 2012, Duran underwent a number of medical procedures for which he was provided accommodations by the County. (Id. ¶¶ 31, 35-37). These accommodations included permitting Duran "to periodically work from home" and

"to take leave as necessary to receive medical care and treatment." (Id. ¶ 31).

Shortly after Snyder's term on the Board of Commissioners commenced in January of 2012, Snyder questioned Duran about the amount of hours he worked on-site at the Correctional Facility. (Id. ¶ 33). Snyder then demanded Duran's physical presence there for at least eight hours per day. (Id.) Duran replied that he "would do his best" and that he could fulfill his duties from his nearby home. (Id. ¶ 33).

On October 5, 2012, Duran sent a memo to members of the Clinton County Prison Board requesting medical leave from October 29, 2012 through November 4, 2012. (Id. ¶ 39). "A few days" later, Duran was advised that he needed to attend a public prison board meeting on October 24, 2012. (Id. ¶ 40). Duran alleges that at the meeting, Snyder made or directed to be made a motion to suspend Duran's employment, effective on October 25, 2012, and to terminate Duran's employment on November 6, 2012. (Id. ¶ 42). Duran's termination was confirmed at the next scheduled Board of Commissioners meeting. (Id. ¶ 43). Duran's termination became effective on either November 5 or November 6. (Id. ¶¶ 26, 45).[2]

Duran avers that between 2000 and 2012, he "only received exemplary reviews of his performance" as Warden. (Id. ¶ 24). Duran asserts that his medical status "had not been a concern" prior to Snyder's election to the Board of Commissioners. (Id. ¶ 34). The County did not make a finding of Duran's dishonesty or gross malfeasance prior to his termination. (Id. ¶ 48). In his complaint, Duran alleges that his termination resulted from "Mr. Snyder's and or

_____

[2] Duran states in his complaint that his termination was effective on November 5, 2012. (Doc. 1 ¶¶ 45, 107, 124). Elsewhere in his complaint, he identifies November 6, 2012 as his effective date of termination. (Id. ¶¶ 26, 57).

[sic] the Commissioners' disdain for" his health-related accommodations and request for medical leave.  (Id. ¶ 30).

On October 23, 2014, Duran filed the complaint (Doc. 1) against the County and Snyder, Smeltz, and Long.  Duran asserts against all defendants a retaliation claim under the FMLA, procedural due process claims under 42 U.S.C. § 1983, and a wrongful termination claim.  (Id.)  Duran also asserts a state law claim for tortious interference with contract against Snyder, Smeltz, and Long, as well as a claim for breach of contract against the County.  (Id.)  On December 22, 2014, defendants filed the instant motion (Doc. 5) to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  See FED. R. CIV. P. 12(b)(6).  The motion is fully briefed and ripe for disposition.

## II.    Jurisdiction and Legal Standard

The court has jurisdiction over the instant matter because the complaint presents a question of federal law.  See 28 U.S.C. § 1331.  Duran alleges that defendants deprived him of his constitutional rights under color of state law.  See 28 U.S.C. § 1343(a)(3).  Duran also asserts a cause of action under federal statutory law.  See 29 U.S.C. § 2617(a).  The court exercises supplemental jurisdiction over the state law claims for wrongful termination, breach of contract, and tortious interference with contract.  See 28 U.S.C. § 1367.  These claims are related to and share a "common nucleus of operative facts" with the federal law claims, thus forming part of the same case or controversy.  Lyons v. Whisman, 45 F.3d 758, 759-60 (3d Cir. 1995) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1996)).

4

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at

131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.    **Discussion**

Defendants contend that Duran's factual averments, even accepted as true, are insufficient to establish his entitlement to relief under the FMLA, Section 1983 and the Fourteenth Amendment, and state law governing tortious interference with contract, wrongful termination, and breach of contract disputes. The court will address these issues *seriatim*.

## A.    FMLA Claim

Defendants argue that Duran has not set forth sufficient factual allegations to sustain a retaliation claim under the FMLA.[3]  (See Doc. 6 at 8-10).  Specifically, defendants assert that Duran's complaint "fails to plead any facts giving rise to an inference of a causal link between his FMLA request and his separation of employment."  (Id. at 10).  Duran responds that he has adequately pleaded causation because his complaint shows the "unusually suggestive timing" of his suspension and termination in relation to his requested leave period.  (Doc. 7-1 at 16-17).

The FMLA was designed in part "to balance the demands of the workplace with the needs of families."  29 U.S.C. § 2601(b)(1).  Under the FMLA, an eligible employee is entitled to "12 workweeks of leave during any 12-month period" for certain qualifying events.  29 U.S.C. § 2612(a)(1)(D).  Retaliation claims derive from the FMLA's "proscriptive rights," which prohibit discrimination or retaliation against an employee for exercising the substantive rights created by the FMLA. See Rigel v. Wilks, No. 1:03-CV-971, 2006 WL 3831384, at *10 (M.D. Pa. Dec. 28, 2006) (distinguishing between the FMLA's prescriptive or substantive and proscriptive

_____

[3] Duran's complaint is unclear as to whether he asserts claims for interference with his FMLA rights, for retaliation for his exercise of those rights, or for both interference and retaliation.  (See Doc. 1 ¶¶ 52-59); see also Cullison v. Dauphin Cty., PA, No. 1:10-CV-705, 2012 WL 3026784, at *6 (M.D. Pa. July 24, 2012) (describing the distinction between FMLA interference and retaliation claims). Defendants address both theories of liability in their supporting brief.  (Doc. 6 at 6-10).  Duran acknowledges only a retaliation claim in his response, (see Doc. 7-1 at 15-17), and thus has effectively waived an interference claim.  See D'Angio v. Borough of Nescopeck, 34 F.Supp. 2d 256, 265 (M.D. Pa. 1999) (regarding abandonment of a position as tantamount to waiver).

rights).  The Third Circuit Court of Appeals has observed that although retaliation claims alleging that an employee was unlawfully terminated for taking FMLA leave do not fall within the "literal scope" of 29 U.S.C. § 2615(a)(2), such claims are nevertheless cognizable under 29 C.F.R. § 825.220(c).  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 n.9 (3d Cir. 2004); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 n.10 (3d Cir. 2012) ("[W]e have predicated liability for retaliation based on an employee's exercise of FMLA rights on the regulation itself.").  The relevant regulation provides that the FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).

To establish a retaliation claim, a plaintiff must demonstrate that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."  Lichtenstein, 691 F.3d at 301-02.  A plaintiff may support the element of a causal link between the FMLA leave and an adverse employment action by showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.2007)).  When the temporal proximity is not unusually suggestive, a plaintiff may still show causation if "the proffered evidence, looked at as a whole, may suffice to raise the inference."  LeBoon v. Lancaster

Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir.2000)).

Duran alleges sufficient facts for his FMLA retaliation claim to survive defendants' motion to dismiss. Duran requested medical leave on October 5, 2012. (Doc. 1 ¶ 39). His termination became effective one month later, on or about the day he had planned to return to work full-time. (Id. ¶¶ 42, 45). Further, Duran's chronology of his termination process begins only "a few days after" his leave request. (Doc. 1 ¶ 40). At this stage, these factual allegations are adequate to support the causation element of a retaliation claim. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177-79 (3d Cir. 1997) (finding that a four-month gap between the alleged protected activity and retaliatory action did not preclude retaliation claim at pleading stage); McDonald v. SEIU Healthcare Pennsylvania, No. 1:13-CV-2555, 2014 WL 4672493, at *18 (M.D. Pa. Sept. 18, 2014) (Conner, C.J.) (stating in motion to dismiss context that "whether the precise timing of defendants' employment actions establishes causation need not be resolved at this stage in the proceedings"); Hines v. Twp. of Harrisburg, Pa., No. 07-0594, 2007 WL 2907896, at *2 (W.D. Pa. Sept. 30, 2007) (declining to "make a determination as to causation in the context of a motion to dismiss" FMLA retaliation claim). Defendants raise the concern that if Duran's allegations of unusually suggestive timing now suffice, then employers would be "precluded from terminating an employee at the conclusion of a contract period where the employee requests FMLA leave at that time." (Doc. 8 at 6). However, because Duran still faces the burden of establishing a causal relation between his FMLA leave and defendants' alleged retaliation at summary judgment,

this concern is unwarranted.  See Kachmar, 109 F.3d at 178 (emphasizing that legal outcomes respecting the causation element of retaliation claims may differ depending on the stage of the judicial proceeding).  The court will thus deny defendants' motion to dismiss Duran's FMLA retaliation claim.

**B.    Section 1983 Claims**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under Section 1983, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Defendants do not dispute Duran's contention that defendants Snyder, Smeltz, and Long acted under color of state law.  (See Doc. 1 ¶¶ 61, 64, 87).

In the case *sub judice*, Duran alleges that defendants violated his constitutional rights by failing to provide adequate pre-termination and post-termination procedures, in violation of the Fourteenth Amendment.  He asserts claims against Snyder, Smeltz, and Long in both their individual and official capacities, as well as claims against the County.  The court will address these claims in turn.

### 1. **Official Capacity Claims Against Snyder, Smeltz, and Long**

Defendants properly seek dismissal of Duran's Section 1983 official capacity claims against Snyder, Smeltz, and Long on the basis that they are "merely duplicative of the claims against the County." (Doc. 6 at 21).[4] A suit against a government official in his or her official capacity is synonymous with a claim against the government entity itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)) (stating that suits against officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent"); Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.9 (3d Cir. 2006) (recognizing that official-capacity claims "are, effectively, identical to" claims against a local governmental entity); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (same). If a plaintiff asserts claims against both a government entity and the entity's agents in their official capacity, the court should dismiss the official-capacity suits. See Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007) (granting motion to dismiss official capacity suits as duplicative); Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006) (Conner, J.) (granting motion to dismiss official-capacity claims because plaintiff

---

[4] In his complaint, Duran states generally that each of the individual defendants Snyder, Smeltz, and Long "is being sued in both his official and individual capacities." (Doc. 1 ¶¶ 9, 11, 13). Contrary to this general averment, Duran's tortious interference claim may only proceed against the defendants in their individual capacities. (See *infra* Part III.C). The court also notes that Duran expressly references the individual defendants in both their "official and individual capacities" only within his Section 1983 claims. (See Doc. 1 ¶¶ 71, 88). Accordingly, the court construes Duran's complaint to assert official-capacity claims only with respect to his Section 1983 claims.

asserted identical claims against municipality); <u>Abdullah v. Fetrow</u>, No. 1:05-CV-1135, 2006 WL 1274994, at *4 (M.D. Pa. May 8, 2006) (Conner, J.) (same). Therefore, Duran's Section 1983 claims against the individual defendants Snyder, Smeltz, and Long in their official capacities duplicate his claims against the County and will be dismissed.[5]  Leave to amend will be denied as futile.  <u>See</u> <u>Grayson</u>, 293 F.3d at 108.

### 2. *Procedural Due Process Claims Against Clinton County*

Defendants contend that Duran's Section 1983 claims against the County should be dismissed because he "does not identify any municipal policy or custom that resulted in his alleged injury."  (Doc. 6 at 12).  Duran appears to reject the idea that he is burdened to identify any such policy.  (<u>See</u> Doc. 7-1 at 18).  The court agrees with the defendants on this issue.

Municipalities and other local government entities may not be held liable under Section 1983 for conduct of their employees under a theory of *respondeat superior* or vicarious liability.  <u>Bd. of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997) (citing <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978)); <u>see</u> <u>also</u> <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1027 (3d Cir. 1991).  However, municipalities may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  <u>Brown</u>, 520 U.S. at 403; <u>see</u> <u>also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986); <u>Carswell v. Borough of</u>

---

[5] Duran offers no response to defendants' argument for dismissal of his claims against the individual defendants in their official capacities.  Hence, the court will also deem Duran's official-capacity claims to be abandoned.  <u>See</u> *supra* note 3.

Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (stating that "[d]istrict courts must review claims of municipal liability independently of the section 1983 claims against" individual defendants) (internal quotation omitted).

To establish liability under Monell, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting, in part, Pembaur, 475 U.S. at 481). A custom is formed when the "practices of state officials [are] so permanent and well settled as to virtually constitute law." Id. A plaintiff also may establish a custom by evidence of knowledge or acquiescence in a pattern of constitutional violations. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).

In his complaint, Duran alleges that Snyder, Smeltz, and Long had "final decision making authority regarding the termination of Plaintiff's employment, and the conduct by which he was deprived of his constitutional and civil rights." (Doc. 1 ¶ 62). Duran fails, however, to identify a municipal policy or custom and to allege a causal link between that policy and any injury he suffered. See Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010) (dismissing Monell claim when plaintiff failed to allege an official with policymaking authority who took action that "could fairly be said to be policy"); Briston v. Cty. of Allegheny, No. 2:08-CV-1380, 2011 WL 635267, at *6 (W.D. Pa. Feb.11, 2011) (The "inability to advance facts

13

sufficient to identify an existing policy . . . precludes the ability to establish <u>Monell</u> liability"). Duran therefore does not satisfactorily allege the elements of a <u>Monell</u> claim. Accordingly, the court will dismiss without prejudice Duran's Section 1983 claims against the County.

### 3. *Procedural Due Process Claims Against Snyder, Smeltz, and Long*

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To prevail on a Section 1983 procedural due process claim, a plaintiff must demonstrate (1) that he or she was deprived of a protected liberty or property interest under the Fourteenth Amendment, and (2) that the procedures afforded him or her failed to comport with the requirements of due process. <u>Hill</u>, 455 F.3d at 233-34 (citing <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000)). In the instant matter, Duran alleges both property and liberty deprivations, and defendants challenge the sufficiency of both claims.

#### a. <u>Property Interest</u>

Defendants argue that Duran does not satisfactorily allege a procedural due process claim because "he had no property interest in his job after November 5, 2012." (Doc. 6 at 14). In response, Duran states that he has pleaded "more than a unilateral expectation of continued employment sufficient to trigger" procedural due process protections. (Doc. 7-1 at 19).

A property interest protected by the Fourteenth Amendment exists only if the plaintiff has "a legitimate claim of entitlement" to the interest. <u>Bd. of Regents of</u>

State Colls. v. Roth, 408 U.S. 564, 577 (1972); Hill, 455 F.3d at 234; Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005).  Legitimate entitlement to a job requires "more than a unilateral expectation of continued employment."  Elmore, 399 F.3d at 282. Constitutionally protected property interests are created by other law, such as state law.  Roth, 408 U.S. at 577 (holding that property interests derive from independent sources like state law); Hill, 455 F.3d at 234 (observing that the existence of a property interest is "a question answered by state law").  In the case at hand, Pennsylvania law governs whether Duran had a protected property interest in his employment.  See Dee v. Borough of Dunmore, 549 F.3d 225, 229-30 (3d Cir. 2008); Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 n.9 (M.D. Pa. 2004) (Conner, J.).

Under Pennsylvania law, protected property interests arise in three ways: First, through legislative action or authorization, see Aguilar v. Pa. Apple Mktg. Program, No. 1:05-CV-0804, 2006 WL 167820, at *6 (M.D. Pa. Jan.19, 2006); Pivarnik v. Commonwealth, Dep't of Transp., 474 A.2d 732, 734 (Pa. Commw. Ct. 1984); Second, through a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits, see Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991) (stating that contracts granting protected status create property rights); Third, through an employment contract permitting dismissal only for cause, see Unger, 928 F.2d at 1399 (summarizing protection conferred on employment contracts terminable only for cause); see also Linan-Faye Constr. Co. v. Hous. Auth. of Camden, 49 F.3d 915, 932 (3d Cir. 1995) (extending procedural due process protection to employment contracts that require cause for termination); Aguilar, 2006 WL 167820, at *6 (same).

In the case *sub judice*, Duran bases his assertion of having more than a unilateral expectation of continued employment on his alleged status as a "contracted employee." (Doc. 1 ¶ 65). Yet, as explained more fully *infra* in the court's consideration of Duran's breach of contract claim, Duran's factual allegations do not raise the reasonable inference that he had a contractually-based expectation of continued employment after the expiration of his employment contract.[6] In the absence of a viable contract renewal argument or other theory, Duran's post-contract expiration status would have been at-will and therefore not protected by the Fourteenth Amendment. See Elmore, 399 F.3d at 282 ("The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment."); Cooley v. Pa. Hous. Fin. Agency, 830 F.2d 469, 471 (3d Cir. 1987); Bell v. Lackawanna Cty., 892 F. Supp. 2d 647, 658 n.8 (M.D. Pa. 2012) (Conner, J.) ("[A]t-will employees . . . have no property interest in their positions and, thus, have no due process rights prior to termination."); Chinoy v. Pa. State Univ., No. 11-CV-1263, 2012 WL 727965, at *4 (M.D. Pa. Mar. 6, 2012) (suggesting a presumption of at-will status when employment contract expires). Hence, before the court reaches the issue of what protections the employment contract afforded, Duran must allege facts supporting his conclusory assertion that he was a "contracted employee" even after his contract's expiration. The court

---

[6] In short, Duran claims that his employment contract expired on November 4, 2012, and that it had renewed before the effective date of his termination on November 5, 2012. (Doc. 1 ¶¶ 44, 45). His apparent theory of implied renewal (as the employment contract contains no automatic renewal clause) is belied by defendants' opposition to his continued employment (Doc. 1 ¶¶ 42-43) and Duran's failure to allege that he continued his employment services after the contract's expiration. See *infra* Part III.E.

therefore will dismiss without prejudice Duran's Section 1983 procedural due process claim alleging deprivation of property.

### b. Liberty Interest

Defendants argue that Duran fails to state a claim for deprivation of a liberty interest because he "does not provide any allegations of false or misleading statements that were allegedly made about him in connection with his separation of employment." (Doc. 6 at 15). Duran maintains that he has sufficiently stated his claim because he avers that defendants "fabricated pre-textual reasons, explanations, and claims upon which to falsely premise" his employment termination. (Doc. 7-1 at 20).

An individual may have a protected liberty interest in his or her reputation. See Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). However, "reputation alone is not an interest protected by the Due Process Clause." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976)). To assert a due process claim for a liberty interest in reputation, a plaintiff must show "a stigma to his reputation plus deprivation of some additional right or interest." Hill, 455 F.3d at 236 (stating that, in the public employment context, "the creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus' "). To satisfy the "stigma" requirement, the stigmatizing statements must have been made publicly and must be false. Id.; see also Brown v. Montgomery Cty., 470 F. App'x 87, 91 (3d Cir. 2012) (non-precedential) (stating that, in order to establish the "stigma" prong, plaintiff must show

"1) publication of 2) a substantially and materially false statement that 3) infringed upon [plaintiff's] 'reputation, honor, or integrity' " (citation omitted)).

Duran fails to plead the "stigma" requirement of his "stigma-plus" claim. Duran avers in his complaint that defendants "have blackened Plaintiff's name and reputation," and that "the false and defamatory impressions and statements created and disseminated by the Defendants . . . were false, misleading, . . . and were made publicly and as part of the Plaintiff's permanent employment record."  (Doc. 1 ¶¶ 88-89).  Nevertheless, surviving a motion to dismiss requires factual allegations that "raise a right to relief above the speculative level and the complaining party must offer more than labels and conclusions or a formulaic recitation of elements of a cause of action."  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (internal citations omitted).

Duran attempts greater specificity in his opposition brief, (Doc. 7-1 at 20), but as noted by defendants, a complaint may not be amended through a brief opposing a dispositive motion.  See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984))).  Duran must allege within his complaint those facts sufficient to meet his pleading burden.  See Dunkel v. Mt. Carbon/N. Manheim Fire Co., 970 F. Supp. 2d 374, 383 (M.D. Pa. 2013) (plaintiff adequately pleaded stigma prong when he alleged specific statements made by defendants and also alleged that the statements were both false and public);

<u>Arneault v. O'Toole</u>, 864 F. Supp. 2d 361, 396 (W.D. Pa. 2012) (same).[7] Accordingly, the court will dismiss without prejudice Duran's Section 1983 procedural due process claim alleging deprivation of a liberty interest.

### C.     State Law Claim for Tortious Interference with Contract

Defendants contend that Duran's tortious interference with contract claim against Snyder, Smeltz, and Long must be dismissed because they "are not a third party with regard to Duran's employment agreement." (Doc. 6 at 20). Duran responds that because he brings suit against Snyder, Smeltz, and Long in their *individual* capacities, he has alleged interference by third parties. (<u>See</u> Doc. 7-1 at 22). Accordingly, the court must determine whether the County commissioners, when sued in their individual capacities, constitute third parties with respect to a contract between the County and Duran.

Pennsylvania has adopted the standard of the Restatement (Second) of Torts § 766 to determine the elements of a tortious interference claim. <u>See</u> <u>Adler, Barish, Daniels, Levin and Creskoff v. Epstein</u>, 393 A.2d 1175, 1183 (Pa. 1978); <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 470-71 (Pa. 1979). <u>See</u> <u>also</u> <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.</u>, 898 F.2d 914, 925 (3d Cir. 1990). In order to state a *prima facie* claim of tortious interference, the complaint must allege "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant,

---

[7] The closest that Duran comes to allegations of false statements is a footnote detailing an alleged assertion by Snyder connecting Duran's termination to missing prison equipment. (Doc. 1 ¶ 34 n.2). Duran does not link this alleged assertion, made one year after his termination, to the stigma-plus context or assert its defamatory nature.

specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004); see also Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000); Pawlowski v. Smorto, 588 A.2d 36, 39-40 (Pa. Super. Ct. 1991).

The requirement that the contract at issue be between the complainant and a third party means that a plaintiff cannot assert a tortious interference claim against a party to the contract. See Kelly v. Bloom, No. 3:11-CV-928, 2012 WL 425257, at *6 (M.D. Pa. Feb. 9, 2012) ("Simply stated, a party cannot interfere with its own contract."); Mele v. TSE Systems, No. 09-174, 2010 WL 3075741, at *4 (E.D. Pa. Aug. 5, 2010) ("A claim for intentional interference with contractual relations must involve three parties: the plaintiff, the alleged tortfeasor, and a third party."); Nix v. Temple Univ., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991) ("Essential to the right of recovery on this theory is the existence of a contractual relationship between the plaintiff and a party other than the defendant.").

In general, the employees of a corporate entity cannot be third party tortfeasors in relation to the plaintiff and the corporate contracting party. See Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc., 519 A.2d 997, 1000 (Pa. Super. Ct. 1987) ("A corporation is a creature of legal fiction which can 'act' only through its officers, directors and other agents. . . . Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone is liable for breach of the contract."); Killian

v. McCulloch, 850 F. Supp. 1239, 1251-52 (E.D. Pa. 1994) (stating that corporate officers and agents cannot be third parties when acting in their official capacities). This corporate agency principle has been recognized in broader contexts, including that of a municipality and its agents. See Whaumbush v. City of Phila., 747 F. Supp. 2d 505, 513 (E.D. Pa. 2010) (involving city of Philadelphia as a party to a contract); see also Kelly, 2012 WL 425257, at *6 ("These corporate agency principals [sic] are equally applicable within a school district context.").

An employee satisfies the requirement of third party status only when he or she acts outside the scope of employment. See Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 173 (3d Cir. 2001); Am. Trade Partners, L.P. v. A-1 Int'l Importing Enters, Ltd., 757 F. Supp. 545, 555 (E.D. Pa. 1991). A number of district court cases interpreting Pennsylvania law have suggested that an agent acts outside the scope of employment when the "sole motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest." Wagner v. Tuscarora Sch. Dist., No. 1:04-CV-1133, 2006 WL 167731, at *12 (M.D. Pa. Jan. 20, 2006) (citing Killian, 850 F. Supp. at 1252); see also Kelly v. Bloom, 2012 WL 425257 at *6; Corrections USA v. McNany, 892 F. Supp. 2d 626, 637 (M.D. Pa. 2012); Ruder v. Pequea Valley Sch. Dist., 790 F. Supp. 2d 377, 395

(E.D. Pa. 2011); <u>Avins v. Moll</u>, 610 F. Supp. 308, 318 (E.D. Pa. 1984).[8] Such improper

motive is not, however, regarded as dispositive. <u>See Wagner</u>, 2006 WL 167731 at *12

("[T]he mere fact that an employer was acting with allegedly improper motive does

not remove their actions from the scope of their employment.").

Duran alleges sufficient facts in support of his tortious interference claim to

survive defendants' motion to dismiss. He avers that Snyder, Smeltz, and Long

"acted with malicious and/or reckless disregard," "conspired and acted with the

intention of causing the Plaintiff to be falsely and wrongfully terminated from his

employment," and "had no purpose other than the wrongful interference in and

termination of Plaintiff's contractual relationship with the County." (Doc. 1 ¶¶ 94,

96-97). Accepting these allegations as true, the court finds that Duran has raised a

reasonable inference that defendants acted outside the scope of their employment.

<u>See Hall v. Easton Area Sch. Dist.</u>, No.10-7603, 2012 WL 526287, at *8 (E.D. Pa. Feb.

17, 2012) (finding allegations of personal, intentional, and retaliatory action

sufficient in motion to dismiss context); <u>Whaumbush</u>, 747 F. Supp. 2d at 513 (finding

allegations of intentional and malicious conduct sufficient at motion to dismiss

stage); <u>Rocking Horse Child Care Ctrs. of Am., Inc. v. Carneal</u>, No. 94-7606, 1995 WL

---

[8] Defendants cite <u>Kernaghan v. BCI Commc'ns, Inc.</u>, 802 F.Supp. 2d 590, 596 (E.D. Pa. 2011), to support their argument that Snyder, Smeltz, and Long cannot constitute third parties to the contractual relationship between Duran and the County because they had "control over" the relationship. (Doc. 8 at 13). This argument depends on application of the so-called "stranger rule," which, notably, Pennsylvania has not adopted and which the <u>Kernaghan</u> court explicitly declined to apply. (<u>See Kernaghan</u>, 802 F.Supp. 2d at 596-97) (stating that "the Court will not expand the [Pennsylvania test] to include language that a defendant be a 'stranger' to the agreement"). Defendants' cited case is therefore inapposite.

216947, at *5 (E.D. Pa. Apr. 11, 1995) (same).  Accordingly, the court will deny defendants' motion to dismiss Duran's tortious interference claim.

### D.      State Law Claim for Wrongful Termination[9]

Defendants assert that Duran's wrongful discharge claim should be dismissed because he "does not allege any facts to support a recognized public policy exception" to Pennsylvania's at-will employment doctrine.  (Doc. 6 at 16).  In response, Duran points to his allegation that his termination violated his "constitutionally protected rights and the laws and public policies of the Commonwealth of Pennsylvania."  (Doc. 7-1 at 21).  Duran claims that Pennsylvania public policies include his FMLA-based rights.  (Id. at 21).

Under Pennsylvania's employment at-will doctrine, employers may terminate employees "for any or no reason" unless a written contract exists between the parties.  Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (quoting Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974)); see also Hershberger v. Jersey Shore Steel Co., 575 A.2d 944, 946 (Pa. Super. Ct. 1990) ("[A]n at-will employment environment is the norm . . . thus, an employee can be terminated for good reason, bad reason, or no reason at all.") (citing Henry v. Pittsburgh & Lake Erie R.R. Co., 21 A. 157 (Pa.1891)).  There is no common law cause of action for wrongful discharge of an at-

---

[9] The court assumes that Duran pleads in the alternative with regard to his wrongful termination and breach of contract claims, because "[i]t is well-settled that the tort of wrongful discharge is available only where there is an employment-at-will relationship."  H&R Block E. Tax Servs., Inc. v. Zarilla, 69 A.3d 246, 252 (Pa. Super. Ct. 2013) (citing Weaver v. Harpster, 975 A.2d 555, 557 n.3 (Pa. 2009); see also Gorwara v. AEL Indus., Inc., No. 89-6401, 1990 WL 44702, at *6 (E.D. Pa. Apr. 12, 1990) ("Pennsylvania law only recognizes a cause of action for wrongful discharge when the employment is at-will, the rationale being that employees who are not at-will can pursue their cases under breach of contract theories.").

will employee. <u>Shick</u>, 716 A.2d at 1233; <u>see</u> <u>also</u> <u>Bell</u>, 892 F. Supp. 2d at 690.

However, the Pennsylvania Supreme Court has carved out a narrow exception to

the employment at-will doctrine: an employee may bring a common law wrongful

discharge action for termination of at-will employment if he or she can demonstrate

that the discharge violates "clearly mandated public policy." <u>Bell</u>, 892 F. Supp. 2d at

690 (quoting <u>Clay v. Advanced Comput. Applications, Inc.</u>, 559 A.2d 917, 918-19 (Pa.

1989)). The public policy exception to the employment at-will doctrine is applied to

"significant and recognized public policies." <u>Yetter v. Ward Trucking Corp.</u>, 585

A.2d 1022, 1026 (Pa. Super Ct. 1991). "The right of a court to declare what is or is

not in accord with public policy exists 'only when a given policy is so obviously for

or against public health, safety, morals, or welfare that there is a virtual unanimity

of opinion in regard to it.' " <u>Weaver v. Harpster</u>, 975 A.2d 555, 563 (Pa. 2009).

    Public policy is determined by examining the Pennsylvania Constitution,

Pennsylvania statutes, and Pennsylvania court decisions. <u>Id.</u> The focus is thus on

Pennsylvania law, not federal constitutional or statutory law. <u>See</u> <u>Frederick v.</u>

<u>Barbush</u>, No. 1:13-CV-661, 2014 WL 840390, at *12 (M.D. Pa. Mar. 4, 2014) (Conner,

C.J.) ("[B]oth federal and state courts in Pennsylvania are disinclined to apply the

public policy exception broadly to find a cause of action based solely upon

constitutional protections.") (citing <u>Bell</u>, 892 F. Supp. 2d at 691); <u>see</u> <u>also</u> <u>Dewees v.</u>

<u>Haste</u>, 620 F. Supp. 2d 625, 639-40 (M.D. Pa. 2009); <u>McLaughlin v. Gastrointestinal</u>

<u>Specialists, Inc.</u>, 750 A.2d 283, 289 (Pa. 2000) (holding that a plaintiff must "do more

than show a possible violation of a federal statute that implicates her own personal

interest" by alleging that "some public policy of this Commonwealth is implicated").

The narrow exceptions to the employment at-will doctrine include: (1) termination for filing a workers' compensation claim, see Shick, 716 A.2d 1231, 1238; (2) termination for filing an unemployment compensation claim, see Highhouse v. Avery Transp., 660 A.2d 1374, 1378 (Pa. Super. Ct. 1995); and (3) termination for refusal to submit to a polygraph test, see Kroen v. Bedway Sec. Agency, 633 A.2d 628, 633 (Pa. Super. Ct. 1993).

Duran's complaint fails to state a claim for wrongful discharge. First, his allegations lack the requisite specificity because he does not identify a public policy *of Pennsylvania* violated by the defendants. See McLaughlin, 750 A.2d at 288 (affirming dismissal when plaintiff failed to show "how her discharge undermines any particular public interest of this Commonwealth"). Duran's vague reference to "constitutionally protected rights" does not suffice. See Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). His reliance on federal statutory law also cannot sustain a claim for wrongful termination. See McLaughlin, 750 A.2d at 320 (pronouncing that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of the Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation").

Second, the existence of statutory remedies counsels against a public policy exception. See Bruffett v. Warner Commc'ns Inc., 692 F.2d 910, 919 (3d Cir. 1982)

(stating that "the only Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available"); Frederick, 2014 WL 840390 at *13 (finding no viable public policy exception where plaintiffs "already availed themselves of recognized causes of action under 42 U.S.C. § 1983 for the purported violation of their due process and equal protection rights"). Duran's public policy argument is premised primarily on defendants' alleged violation of the FMLA. (Doc. 7-1 at 21). Courts interpreting Pennsylvania law have consistently rejected a separate cause of action for wrongful discharge when a claim under the FMLA is asserted for the same conduct. See Atchinson v. Sears, No. 08-3257, 2009 WL 2518440, at *4 (E.D. Pa. Aug. 17, 2009) (disallowing separate cause of action based upon "the theory that [plaintiff's] termination violates the policy set forth by the FMLA"); McKiernan v. Smith-Edwards-Dunlap Co., No. 95-1175, 1995 WL 311393, at *5 (E.D. Pa. May 17, 1995) (stating that the FMLA itself, rather than a state common law cause of action for wrongful discharge, is "the proper remedy for any" FMLA violation); Blake v. UPMC Passavant Hosp., No. 06-193, 2008 WL 936917, at *11 (W.D. Pa. Apr. 4, 2008) (holding that when remedies under the FMLA were available to plaintiff to redress his injury, a claim for wrongful discharge would not lie).

The above discussion suggests the difficulty Duran would face in amending his complaint to state a viable claim for wrongful discharge. As difficulty is not equivalent to futility, the court will dismiss Duran's wrongful discharge claim without prejudice.

### E.    State Law Claim for Breach of Contract

Defendants argue that Duran cannot maintain his breach of contract claim because his employment contract did not automatically renew, and thus Duran's termination date coincided with his contract's expiration date on November 5, 2012. (See Doc. 6 at 18).  In reply, Duran defends his calculation of his contract expiration date of November 4, 2012 and asserts a theory of implied contract renewal.  (See Doc. 7-1 at 23-24).

Under Pennsylvania law, to establish a claim for breach of contract, a complaining party must prove (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by that contract; and (3) resulting damages. Reed v. Chambersburg Area Sch. Dist., 951 F. Supp. 2d 706, 726 (M.D. Pa. 2013).  A contract's existence may be shown on a theory of renewal presumption when the parties to an expired contract continue to act as they did pre-expiration of the contract.  See Burge v. W. Pa. Higher Educ. Counsel, Inc., 570 A.2d 536, 538 (Pa. Super. Ct. 1990) (citing Smith v. Shallcross, 69 A.2d 156, 158-59 (Pa. Super. Ct. 1949); WILLISTON, CONTRACTS § 90; 35 AM.JUR., Master and Servant §§ 15, 19; 56 C.J.S. Master and Servant §§ 8-10; 30 C.J.S. Employer-Employee § 29 (2002).  Parties continue to act as they did pre-expiration when one party continues to provide services and the other party does not object.  See Smith, 69 A.2d at 158; Janis v. Amp, 856 A.2d 140, 147-48 (Pa. Super. Ct. 2004) (finding proper jury instruction that recognized renewal presumption if employee continued same services post-contract expiration and employer did not object).

To the extent Duran suggests that the precise date of his employment contract's expiration is "a factual dispute" best resolved at a later stage, he is correct. (Doc. 7-1 at 24); see Breon v. Waypoint Ins. Grp., Inc., No.1:06-CV-2204, 2007 WL 1575225, at *3 (M.D. Pa. May 31, 2007) (Conner, J.) (finding "fact-sensitive inquir[ies] more appropriately reserved for summary judgment"). This point does not save his breach of contract claim, however, because Duran does not allege facts in support of his renewal presumption theory. Duran does not claim to have continued his employment services after his employment contract's expiration. And Duran's own account of his suspension and termination strongly suggests defendants' objection to his continued provision of services. (See Doc. 1 ¶¶ 42-43). His case is therefore easily distinguishable from those in which a court has found the contract renewal presumption applicable. See, e.g., Kapustik v. Sch. Dist. of City of Arnold, 111 A.2d 169, 172 (Pa. Super. Ct. 1955) (finding implied contract renewal when the employee continued her employment services "for successive annual periods with the express consent and approval of" her employer). The court will thus dismiss Duran's breach of contract claim without prejudice and permit Duran to amend his complaint in accordance with the foregoing.

## IV.    Conclusion

For all of the foregoing reasons, defendants' motion (Doc. 5) to dismiss will be granted in part and denied in part.  An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        September 25, 2015