# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS V. DURAN, | : | CIVIL ACTION NO. 4:14-CV-2047 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF CLINTON, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

The parties filed a bevy of pretrial motions in advance of their upcoming civil trial. Defendant County of Clinton (the "County") filed an omnibus motion (Doc. 70) *in limine* seeking to preclude certain testimony and evidence as well as two motions (Docs. 90, 93) to quash trial subpoenas. Plaintiff Thomas V. Duran ("Duran") filed a motion (Doc. 68) *in limine* to exclude expert witness testimony and a motion (Doc. 79) for spoliation sanctions.

## I. Factual Background & Procedural History[1]

The County is governed by a three-member Board of Commissioners that was comprised at all relevant times of former defendants Robert Smeltz, Joel Long, and Jeffrey Snyder ("Commissioner Snyder"). Duran, 2019 WL 1424572, at *1. The commissioners were members of the seven-person Clinton County Prison Board

---

[1] The court issued a memorandum opinion and order on the motion for summary judgment filed by the County and three former individual defendants. See Duran v. County of Clinton, No. 4:14-CV-2047, 2019 WL 1424572 (M.D. Pa. Mar. 29, 2019). The factual background of this case is more fully detailed in that prior opinion, familiarity with which is presumed. We reiterate certain facts pertinent to the instant motions in the following factual narrative.

(the "Prison Board") which oversees the Clinton County Correctional Facility (the "Facility") and recommends Facility personnel decisions to the Board of Commissioners for approval. Id. at *2. Commissioner Snyder was the Prison Board chairman in 2012, and Duran served as warden of the Facility pursuant to a five-year employment contract that expired on November 5, 2012. Id.

Duran experienced numerous and significant health issues during his tenure as warden. Id. Between 2008 and 2011, he required multiple periods of time away from work to recover from eight surgeries. Id. Duran notified the Prison Board by interoffice memo dated October 5, 2012, that he scheduled a shoulder surgery for October 29 and required corresponding medical leave. Id. at *5. At a public meeting on October 24, 2012, the Prison Board voted to suspend Duran with pay for the duration of his employment contract and then terminate him. Id. The County contends that Duran was fired because of his poor management of the Facility and its finances. Id.; see id. at *2-4. Duran believes his termination stemmed from Commissioner Snyder's discriminatory animus toward Duran's disabilities and age.

Duran commenced this action on October 23, 2014. After Rule 56 motion practice, this matter is proceeding to trial on the following claims against the County: retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count I), discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Counts III, IV), and discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (Counts V, VI). Jury selection and trial are scheduled for August 12, 2019. Duran and the County have each filed several pretrial motions.

2

## II. Discussion

The County moves to preclude Duran from introducing evidence or testimony relating to: (1) a former employee's termination from the County's employ; (2) Duran's anticipated position that he occasionally worked from home as an ADA accommodation; (3) Commissioner Snyder's purported discriminatory animus toward Duran on account of his disabilities; and (4) the destruction of County emails in June 2014.[2] Duran requests spoliation sanctions and an adverse inference against the County concerning this alleged intentional destruction. The County also moves to quash trial subpoenas issued to witnesses whose proffered testimony would concern the former employee's discharge and the destruction of the County's emails. We take these issues in turn.

### A. Evidence Concerning Treatment of Similarly Situated Employee

Duran has identified Connie Eck ("Eck") as a similarly situated employee against whom he believes the County also discriminated on the basis of disability. The County seeks to exclude any evidence pertaining to Eck's termination from trial. (Doc. 71 at 4). It contends that the evidence is irrelevant to Duran's claims that the County, through its Prison Board, retaliated against him for requesting medical leave, in violation of the FMLA and the ADA, and otherwise discriminated against him because of his disability. (See Doc. 55 ¶¶ 58, 74, 80-81, 88, 96).

---

[2] Duran filed a motion (Doc. 68) *in limine* to preclude any expert witness testimony not identified prior to the close of discovery. The County represents that it will not produce any expert witnesses at trial. (Doc. 81 at 1). We will deny Duran's motion as moot without prejudice to his right to refile same in the event circumstances change and the County expresses an intent to introduce expert witness testimony at trial.

3

To prevail on his FMLA and ADA claims, Duran must establish that the County's proffered justifications for firing him were pretext for discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012); Shaner v. Synthes, 204 F.3d 494, 500-01 (3d Cir. 2000). "Evidence of an employer's conduct towards other employees" is both relevant and admissible to prove pretext. Ansell v. Green Acres Contracting Co., 347 F.3d 515, 521 (3d Cir. 2003); Becker v. ARCO Chem. Co., 207 F.3d 176, 194 n.8 (3d Cir. 2000) (collecting cases). This evidence tends to fall into two categories of proof: "that the [County] treated other, similarly situated persons out of [Duran's] protected class more favorably, or that the [County] has discriminated against other members of [Duran's] protected class or other protected categories of persons." Ansell, 347 F.3d at 521 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).[3]

Duran contends that Eck falls in the second category, that is, that she was likewise discriminated against by the County on the basis of disability. By way of background, Eck was initially hired as a corrections officer in 2004 and later became

---

[3] Duran clarifies in his brief in opposition that he intends to introduce evidence concerning Eck's termination "not as character evidence, but rather as direct evidence of Defendants' modus operandi and motive." (Doc. 72 at 6). We are unconvinced that one prior instance of alleged discrimination is sufficient to establish an employer's *modus operandi*. However, evidence concerning Eck's discharge may be admissible under Federal Rule of Evidence 404(b), in the employment discrimination context, for the non-propensity purpose of "establishing or negating discriminatory intent." Ansell, 347 F.3d at 521.

4

the Facility's laundry supervisor. (Doc. 72-3, Eck Depo 11:12-15).[4] In March 2012, the laundry supervisor position was eliminated and Eck returned to a corrections officer role working six days a week on the night shift. (Id. at 11:21-12:5, 12:21-14:9, 14:21-25, 15:11-19, 15:24-16:3). According to a doctor's note dated March 26, 2012, Eck suffered from "longstanding anxiety and depression" and the severity of her symptoms limited her to a "40-hour work week" schedule. (Id. at 17:17-18:2). A second doctor's note dated April 18, 2012—which Eck testified that she gave to a supervisor at the Facility—attributed a worsening of her health conditions to "the change in hours, change in responsibilities[,] and increased interactions with inmates" associated with her new corrections officer position. (Id. at 19:3-16, 19:25-20:17). On April 26, 2012, the Board of Commissioners voted to confirm the termination of Eck effective April 20. (See id. at 21:25-22:17). A notice dated April 22, 2012, indicates that Eck's last day of employment at the Facility was April 16 and that she was terminated because "she could not perform the job." (Doc. 72-4 at 1; Eck Dep. 26:17-28:18).

The evidence reflects notable similarities between the Prison Board's treatment of Duran and of Eck. In October 2012, the Prison Board suspended Duran with pay for the duration of his employment contract and then terminated him approximately three weeks after Duran provided notice of his shoulder surgery

---

[4] Deposition transcripts have been filed by the parties at numerous, separate docket entries. We will cite to full deposition transcripts as "[Name] Dep.," without repeating the docket entry citation *passim*. We employ this citation convention for any full deposition transcripts cited throughout this memorandum. To the extent partial deposition transcripts are cited, we will retain docket entry citations for ease of location.

5

and his need for medical leave.  Duran, 2019 WL 1424572, at *5.  Six months prior, the County terminated Eck's employment as a corrections officer effective two days after she provided the Facility with a doctor's note indicating that her new work schedule and responsibilities were exacerbating her mental and physical health issues.  (Eck Dep. 19:3-20:17, 21:25-22:17).  Eck's discharge notice states that her last day of employment was April 16, 2012, two days *before* she supposedly furnished the Facility with her doctor's note.  (Doc. 72-4 at 1; Eck Dep. 22:1-13, 26:17-28:3).  Both Duran and Eck were fired in close temporal proximity to when they identified their disabilities and need for accommodations, and their respective discharges were approved by the same commissioners acting on behalf of the County.

We find that the parallels between the County's termination of Eck and Duran support admission of Eck's testimony and documentary evidence as relevant to prove the County's discriminatory posture toward individuals with disabilities. We are unpersuaded by the County's blanket assertion that introduction of such evidence will "likely [] create a trial within a trial."  (Doc. 71 at 4).  Eck's testimony and related documentary evidence are probative of the County's discriminatory intent, and the mere fact that such evidence may be harmful to the County's case does not render it *unfairly* prejudicial.  For all of these reasons, we will deny the County's motion *in limine* to exclude evidence and testimony concerning Eck's termination without prejudice to the County's right to raise appropriate objections to proffered evidence or testimony at trial.  We will also deny the County's motion to quash the trial subpoena issued to Eck.

6

### B. Evidence Concerning Reasonable Accommodation

The County next moves to preclude Duran from introducing evidence or argument that he worked from home as a reasonable accommodation under the ADA. (Doc. 71 at 6). This request is essentially a challenge to the strength of Duran's evidence. A motion *in limine* is "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions," Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted), and is not a vehicle for testing the sufficiency of a party's evidence as to a particular claim or defense, Bowers v. NCAA, 563 F. Supp. 2d 508, 532 (D.N.J. 2008) (citation omitted).

Neither of Duran's ADA claims is premised on the County's failure to accommodate a request to work from home following Duran's shoulder surgery in October 2012. (See Doc. 55). However, evidence that the County (and its agents) knew of Duran's historical need for accommodations following his various surgeries may be relevant to establishing the County's discriminatory intent. Evidentiary determinations of this nature are best reserved for trial to allow the court to assess the probative value of the evidence as well as any potential for unfair prejudice arising from its introduction, and to rule in proper context. Moreover, the County is free to cross examine Duran on any matters it believes he testified to inaccurately. We will deny the County's motion on this issue without prejudice to the County's right to reassert its objection at a more appropriate time.

### C. Evidence of Commissioner Snyder's Alleged Discriminatory Animus

The County seeks to preclude Duran from offering evidence or testimony as to Commissioner Snyder's purported discriminatory animus toward him on the

ground that any such evidence would be purely speculative. (Doc. 71 at 10). A witness generally must have personal knowledge of a matter in order to testify as to that matter. FED. R. EVID. 602. A party must introduce sufficient evidentiary support of the witness's personal knowledge, which may include the witness's own testimony, before the witness may testify on a subject. Id. A non-expert witness may testify in the form of a lay opinion if that opinion is "rationally based on the witness's perception" and will assist the jury in either determining a fact in issue or understanding the balance of that witness's testimony. FED. R. EVID. 701. The admission of lay opinion testimony is favored when it is "well founded on personal knowledge and susceptible to specific cross-examination." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) (quoting Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980)); see also United States v. Stadtmauer, 620 F.3d 238, 262 (3d Cir. 2010). A witness may not offer lay opinion testimony that usurps the factfinding role of the jury by "merely tell[ing] the jury what result to reach." United States v. Fulton, 837 F.3d 281, 291 (3d Cir. 2016).

The County points to Duran's deposition testimony, during which Duran indicated that he was "speculating" that Commissioner Snyder terminated him because of his disabilities. (Doc. 71 at 11-13 (quoting Doc. 71-1, Duran Dep. 28:22-29:16, 32:22-33:15, Apr. 10, 2018 ("Duran Dep. II"))). Duran explained that his belief derived from the timing and circumstances of his termination and the absence of any other explanation for the decision. (See id. at 32:22-33:8). Duran also identifies other circumstantial evidence that informed his belief that Commissioner Snyder acted with discriminatory animus toward Duran's disabilities. For example,

8

Commissioner Snyder allegedly instructed Duran that he needed to be present at the Facility eight hours per day despite the fact that Duran was recovering from double knee replacement surgery. (See id. at 34:2-35:5).

We find the County's request to be overly broad and premature. Without the benefit of context at trial, we cannot determine which portions, if any, of Duran's proffered testimony will have the requisite evidentiary foundation to be permissible lay opinion. And the County will have ample opportunity to cross examine Duran on any proper lay opinion he offers at trial. We will deny the County's motion to exclude evidence and testimony of Commissioner Snyder's alleged discriminatory animus without prejudice to the County's right to raise this objection at trial during Duran's testimony.[5]

### D. Evidence Concerning Lost Emails

The parties spill much ink over the County's loss of certain emails and how to address that loss for purposes of trial. According to evidence submitted by the parties, on June 20, 2014, County employee Ernie Jackson inadvertently "pushed the wrong button" during server maintenance causing "a catastrophic loss of [the County's] email system." (Doc. 79-4 at 11, Snyder Dep. 15:24-16:6; Doc. 84-1 at 2-3;

---

[5] The County invokes without explanation Federal Rules of Evidence 402 and 403 in support of its motion *in limine*. (See Doc. 71 at 10). To succeed on his ADA disparate treatment claim, Duran must prove that he suffered an adverse employment action as a result of discrimination. Shaner, 204 F.3d at 500 (citations omitted); see Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)). Therefore, evidence and testimony from which the jury could infer discriminatory animus is relevant to a material fact at issue and the probative value of such evidence outweighs any risk of prejudice to the County as long as admission thereof does not violate any other evidentiary rules.

9

Doc. 79-4 at 9). This "critical failure" impacted all County employees including those working for the Board of Commissioners, the Prison Board, and the Facility. (See Doc. 84-1 at 2-3; Doc. 79-4 at 9). In 2016, Duran requested all emails relevant to his termination sent or received by the commissioners between January 1 and December 21, 2012. (See Doc. 79-4 at 9; Doc. 84-1 at 1). The County responded that any emails responsive to Duran's request were destroyed on June 20, 2014. (Doc. 79-4 at 9; Doc. 84-1 at 1).

### 1. *Spoliation Sanctions*

Duran seeks spoliation sanctions against the County for its destruction of the potentially relevant emails. (Doc. 79). Spoliation occurs when a party destroys, alters, fails to produce, or "fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." Bull v. UPS, 665 F.3d 68, 73 (3d Cir. 2012) (citations omitted). To establish spoliation occurred, the party seeking sanctions must show that: (1) the ostensibly spoliated evidence was in the offending party's control; (2) "the evidence is relevant to the claims or defenses in the case"; (3) the party with control of the evidence actually suppressed or withheld it; and (4) "the duty to preserve the evidence was reasonably foreseeable to th[at] party." Id. (citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995)). An unfavorable inference arises only when the spoliation of evidence "was intentional[] and indicates fraud and a desire to suppress the truth." Brewer, 72 F.3d at 334 (quoting 29 AM. JUR. 2D EVID. § 177).

The County does not dispute that the emails sought by Duran were in its control at the time of their destruction or that at least some of those emails may

have been relevant to the instant litigation. (See Doc. 84 at 2). And the County's duty to preserve emails relevant to Duran's job performance and termination became reasonably foreseeable upon receipt of Duran's October 27, 2012 notice of representation and request to inspect his personnel file. (See Doc. 79-4 at 2-3). However, Duran has not adduced any evidence that the County intentionally destroyed relevant emails in violation of its duty to preserve.

Nothing in the record indicates that the County's loss of emails was the result of anything other than an inadvertent error during server maintenance. (Doc. 84-1 at 2-3; Doc. 79-4 at 9; Snyder Dep. 15:24-16:6). This event impacted all County employees, not just those working for the Board of Commissioners, the Prison Board, and the Facility. (See Doc. 84-1 at 2-3; Doc. 79-4 at 9). Duran requested email records from the time period of January 1 to December 21, 2012, *after* the County lost all historical emails predating June 20, 2014. (See Doc. 79-4 at 9; Doc. 84-1 at 1). It is beyond peradventure that the County did not destroy years of emails countywide merely to suppress evidence in this matter. We find that the County did not intentionally destroy the subject email evidence.

Duran also invokes Federal Rule of Civil Procedure 37 in support of his request for sanctions. Rule 37 permits the court to sanction a party if electronically stored information "that should have been preserved in the anticipation or conduct of litigation is lost because [the] party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e)(1). The County represents that it "took steps to ensure that emails relevant to this case were not removed from its servers or automatically purged." (Doc. 84

at 2). Duran asseverates that the County failed to take reasonable measures to preserve these emails. On the present record, we conclude that the County took reasonable measures. In the exercise of caution, we also conclude that, to the extent the County's preservation measures could be construed as inadequate, the County acted with simple negligence in preserving its electronically stored information; consequently, we cannot determine absent conjecture whether any relevant emails destroyed would have been prejudicial to Duran and not to the County, and sanctions are inappropriate.

### 2. *Motion* in Limine

The County seeks to exclude as irrelevant any evidence or testimony concerning the destruction of emails. Evidence is relevant if it renders a material fact either more or less probable than it would be absent the evidence. FED. R. EVID. 401. Relevant evidence is, as a general rule, admissible. See FED. R. EVID. 402. Evidence should be excluded "if its probative value is substantially outweighed by a danger" that its presentation at trial will, *inter alia*, unfairly prejudice a party, confuse the issues in the case, or waste time and cause undue delay. FED. R. EVID. 403.

The County did not intentionally destroy or fail to preserve emails concerning Duran's employment and termination. And nothing in the record supports a finding that these lost emails were clearly favorable to either party. Therefore, we cannot conclude that evidence or testimony regarding destruction of these emails will render any fact material to Duran's claims in the matter *sub judice* more or less probable. Moreover, presentation of such evidence is likely to confuse

the salient issues and result in undue delay at trial. We will grant the County's motion *in limine* to exclude evidence and testimony about the lost emails.

### 3. *Motion to Quash*

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). A court must, on motion, quash or modify a subpoena that "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv). District courts within the Third Circuit also regularly quash Rule 45 subpoenas that seek information falling outside the proper scope of discovery as defined by Rule 26(b)(1). See, e.g., Saller v. QVC, Inc., No. 15-2279, 2016 WL 8716270, at *3-4 (E.D. Pa. June 24, 2016).

The County moves the court to quash trial subpoenas issued to County employees Suzy Watson and Ernie Jackson on the ground that their proffered testimony pertains only to spoliation. (Doc. 91 at 3). Duran acknowledges that these potential witnesses would only testify as to the destruction of the County's emails on June 20, 2014. (Doc. 92 at 3). As stated *supra*, the County did not engage in spoliation of evidence and whether any of the destroyed emails contained information favorable to a particular party is simply unknowable. Any testimony offered by Suzy Watson or Ernie Jackson concerning the destroyed emails is thus irrelevant to Duran's claims, and requiring their attendance at trial would impose upon them an undue burden. We will grant the County's motion to quash these subpoenas.

## IV. Conclusion

The court will deny as moot Duran's motion (Doc. 68) *in limine*, grant in part and deny in part the County's motion (Doc. 70) *in limine*, deny Duran's motion (Doc. 79) for spoliation sanctions, grant the County's motion (Doc. 90) to quash, and deny the County's motion (Doc. 93) to quash. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: July 3, 2019